NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LEXON INSURANCE COMPANY,              )
                                      )
            Appellant,                )
                                      )
v.                                    )          Case No. 2D16-1533
                                      )
CITY OF CAPE CORAL, FLORIDA; and      )
COCO OF CAPE CORAL, LLC,              )
                                      )
            Appellees.                )
                                      )

Opinion filed November 29, 2017.

Appeal from the Circuit Court for Lee
County; Jay B. Rosman, Judge.

John H. Pelzer of Greenspoon Marder,
P.A., Fort Lauderdale; Victor Kline of
Greenspoon Marder, Orlando; Robert E.
Ferencik, Jr. and Laura A. Baker of
Ferencik Libanoff Brandt Bustamante and
Goldstein, P.A., Fort Lauderdale; and
Bruce L. Mass of Harris Beach PLLC,
Pittsford, New York, for Appellant.

Edmond E. Koester and Alex R. Figares
of Coleman, Yovanovich & Koester, P.A.,
Naples, for Appellee Coco of Cape Coral,
LLC.

E.A. "Seth" Mills, Jr. and S. Jordan Miller
of Mills Paskert Divers P.A., Tampa, for
Amicus Curiae The Surety and Fidelity
Association of America.

Debbie Sines Crockett of Cheffy
Passidomo, P.A., Tampa; and Lisha Bowen
of Lisha Bowen, P.A., Tampa, for Amicus
Curiae United Policyholders.

No appearance for remaining Appellee.

MORRIS, Judge.

Lexon Insurance Company appeals a final judgment entered in favor of
Coco of Cape Coral, LLC (Coco), in Coco's action for breach of $7.7 million surety bond
contracts in connection with the development of a subdivision in Cape Coral, Florida, by
Priority Developers, Inc. (Priority). On appeal, Lexon argues, among other things, that
Coco's claims are barred by the five-year statute of limitations, which Lexon argues
began to run in 2007 when Priority abandoned the project and thus breached the surety
bonds.[1] We agree, and because this issue is dispositive of the action, we decline to
further comment on the other issues raised in this appeal. Accordingly, we reverse the
decision of the trial court.

## I. Facts

On January 31, 2005, the City of Cape Coral adopted Ordinance 14-05, a
development order that governs the commercial and residential development of 446.09
acres. The project at issue in this appeal consists of the development of a single-family
subdivision called the Village at Entrada. Priority hired contractors who began work on
the subdivision improvements in 2005. The site plan permit authorizing the
development of the subdivision was scheduled to expire on September 8, 2007.

---

[1]The Surety and Fidelity Association of America filed an amicus brief in
support of Lexon, and United Policyholders filed an amicus brief in support of Coco.

Ordinance 14-05 required Priority, as the developer, to "provide a surety bond or certified check in an amount of the estimated cost to complete all required site improvements, as determined by the City." In June 2006, Lexon issued two subdivision bonds totaling $7.7 million. This amount represented the cost to complete the remaining work on the subdivision at the time the bonds were issued. The bonds provided as follows:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal [Priority] shall construct, or have constructed, the improvements herein described, and shall save the Obligee [the City] harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

The City stopped completing inspections on the project in late 2006 and the contractor stopped work on the project in March 2007, both due to nonpayment by Priority. Photographs taken by the City's inspector on June 13, 2007, confirmed that the contractor was no longer working on the project, and the City's computer system indicated "that the site plan was closed" on that date. BankAtlantic, the lender on the project, obtained a foreclosure judgment against Priority in 2009.

On October 27, 2010, the City contacted Lexon, representing that the City "would like to place a claim to have the outstanding work on this project completed" and asking Lexon to notify the City "on the next step in this procedure." Lexon responded by letter on November 8, 2010, requesting information from the City in order for Lexon to review the request. The City did not provide the requested information to Lexon or

move forward on the claim because, by this time, the City was receiving interest from potential buyers of the project. In March 2012, Coco purchased the project for $6.2 million. On July 23, 2012, the City adopted Resolution No. 21-12 demanding that Lexon fulfill its obligations under the bonds.

On October 23, 2012, the City filed this action against Lexon for breach of contract and for declaratory relief. The City then assigned its claims to Coco, which was substituted as plaintiff in the action on January 23, 2014. After a bench trial in November 2015, the court memorialized its findings in a letter to the parties and entered judgment on the bonds for Coco and against Lexon on March 1, 2016. The trial court rejected Lexon's claim that the statute of limitations had expired before the City filed its complaint in October 2012. The court found that the lawsuit was timely filed and that

> surety bonds are a type of insurance contract[] and are breached once wrongful denial of a claim occurs. . . . The bonds contain no deadline by which claims must be made. Under Cape Coral Ordinance 14-05, the bond principal's obligations were not due for ten years from the adoption of the Ordinance, January 31, 2005.

The trial court also made additional rulings which we do not address because they are not relevant to the dispositive issue on which we reverse.

## II. Analysis

On appeal, Lexon contends that the trial court erred in concluding that the statute of limitations did not bar Coco's claim because, Lexon argues, "the time to sue on a bond commences when the principal breaches its underlying obligation." Lexon argues that the five-year statute of limitations applicable to a claim for breach of contract began to run in March 2007 because that is the date Priority abandoned the project and the City's cause of action under the bonds accrued.

- 4 -

A legal action on a contract must be commenced within five years, and the cause of action accrues when the last element constituting the cause of action occurs. §§ 95.11(2)(b), 95.031(1), Fla. Stat. (2012). "Florida case law consistently holds that a cause of action for breach of contract accrues and the limitations period commences at the time of the breach." Tech. Packaging, Inc. v. Hanchett, 992 So. 2d 309, 313 (Fla. 2d DCA 2008). "Generally, 'the issue of whether [a] claim is barred by the statute of limitations is a question of law subject to de novo review.' " Access Ins. Planners, Inc. v. Gee, 175 So. 3d 921, 924 (Fla. 4th DCA 2015) (alteration in original) (quoting Beltran v. Vincent P. Miraglia, M.D., P.A., 125 So. 3d 855, 859 (Fla. 4th DCA 2013)). But "[t]he occurrence of a breach . . . is question of fact." Id. The question in this case centers on when the City's, now Coco's, cause of action accrued against Lexon on the surety bonds.

"[S]uretyship has been described as 'a contractual tripartite relationship in which one party (the surety) guarantees to another party (the obligee) that a third party (the principal) will perform a contract in accordance with its terms and conditions. The surety promises the obligee to answer the debt, default, or miscarriage of the principal.' " Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1226 (Fla. 2006) (quoting Edward Etcheverry, Rights and Liabilities of Sureties, in Florida Construction Law and Practice at 8-7 (5th ed. 2006)). Thus, the surety's liability to the obligee is based on the liability of the principal. Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd., 593 So. 2d 195, 198 (Fla. 1992); see 72 C.J.S. Principal and Surety § 86 (2017) ("On a breach by the principal of the contract or condition secured, the surety is liable.").

In Federal Insurance Co. v. Southwest Florida Retirement Center, Inc., 707 So. 2d 1119, 1121-22 (Fla. 1998), the court held that the statute of limitations for an action on a surety bond began to run when the contractor defaulted, which under the facts of the case was when the work was accepted by the obligee, not when the obligee discovered latent defects in the work nine years later. The court noted that it was the principal's "default" that "constituted a breach," rejecting the obligee's argument that "the statute of limitations did not begin to run against [the surety] until" the surety was "called upon to cure the default." Id. at 1121 n.5.

"With respect to a claim arising from a bond, it is . . . well settled that the date of accrual occurs at the time of the breach of the bond." U.S. v. Cocoa Berkau, Inc., 990 F.2d 610, 613 (Fed. Cir. 1993). In Cocoa Berkau, the "critical issue on appeal [was] which event, the default . . . by the bond principal or the default of payment of . . . damages by the bond surety, constituted the breach of the bond which fixed liability for purposes of triggering the statute of limitations." Id. The government argued that the breach occurred when the surety refused payment under the bond after the government demanded payment, but the appellate court disagreed.

The court looked to the language of the bond "stipulating the relevant obligations of the bond principal and its surety." Id. Specifically, the bond provided that upon default of the principal, the principal or surety shall pay damages to the obligee "as may be demanded." Id. The court stated that the bond "placed an obligation on the bond principal to" perform a certain action and that the "bond was breached, and thus the government's right of action accrued, when the principal failed to" perform that action, "not when the surety failed to pay liquidated damages." Id. "[The surety's] duty

as bond surety to pay liquidated damages arose as a consequence of the default . . . by the principal, not on a demand for the damages by the government." Id.

The court went on to hold that a demand by the government for payment "was merely a procedural step for obtaining the damages and did not in itself create the liability." Id.; cf. U.S. v. Ins. Co. of N. Am., 83 F.3d 1507, 1510 (D.C. Cir. 1996) (holding that demand for payment was a prerequisite to commencement of statute of limitations where bond expressly stated that obligee "shall make a written demand" as a condition precedent to surety's liability). The court in Cocoa Berkau further noted that the

> government's interpretation that its right of action accrues only when demand for liquidated damages is made on the surety would subvert the purpose of the statute of limitations, which is intended to ensure that actions are brought in a timely fashion, before they become stale. . . . The accrual of a right of action should occur upon default by a liable party, not when a creditor takes steps to procure performance.

990 F.2d at 614 (citations omitted).

We find the reasoning of Cocoa Berkau persuasive. The surety bond in this case placed an obligation on the principal, Priority, to construct improvements on the project. When Priority failed in its obligation to construct those improvements, the City's right of action on the bond accrued. See id.; see also N.J. Div. of Taxation v. Selective Ins. Co. of Am., 944 A.2d 667, 674 (N.J. Super. Ct. App. Div. 2008) ("[A] claim against a surety arises upon the principal's default." (quoting Ark. State Highway Comm'n v. Union Indem. Ins. Co., 748 S.W.2d 338, 339 (Ark. 1988))); 72 C.J.S. Principal and Surety § 85 ("[T]he liability of a surety accrues on the breach of the contract."). Lexon's duty to pay under the bond arose as a consequence of Priority's failure to construct the improvements, not as a result of the City's demand for damages.

The language in the bond referring to Lexon's "receipt of a resolution" by the City sets forth the procedure by which the City is to seek payment under the bond, but it is not the fact that created Lexon's liability. Under the facts of this case, Lexon became liable when Priority failed to construct the improvements.[2] To hold that the statute of limitations commenced when the City passed a resolution demanding payment in 2012 would be contrary to the purpose of the statute of limitations and would allow the City to wait to bring a claim against Priority as late as 2017, ten years after Priority failed in its obligation under the bonds. See Major League Baseball v. Morsani, 790 So. 2d 1071, 1078 (Fla. 2001) ("[A] main purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims.").

We disagree with the trial court's conclusion that because "surety bonds are a type of insurance contract," they "are breached once wrongful denial of a claim occurs." While a surety contract is a type of insurance contract, "the surety relationship possesses characteristics that are unique and distinct from the traditional liability insurance relationship." Dadeland Depot, Inc., 945 So. 2d at 1226. Because the unique nature of the surety contract bases the surety's liability to the obligee on the liability of the principal, the default of Priority, the principal, was the act that breached the bonds and started the running of the statute of limitations for purposes of Lexon's liability to the City or Coco.

By noting that that the "principal's obligations were not due for ten years from the adoption of the Ordinance, January 31, 2005," the trial court suggested that

---

[2]The date that a contractor abandons a project commences the statute of limitations for a breach of contract claim against the contractor. See Alexander v. Suncoast Builders, Inc., 837 So. 2d 1056, 1058-59 (Fla. 3d DCA 2002).

Priority would not be in breach of the bond until January 2015. The trial court relied on language in the ordinance that provides in pertinent part that "[t]he physical development authorized under this Development Order shall terminate in ten years . . . , unless an extension is approved by" the city council. However, it is clear that Priority stopped its work in March 2007 and there is no indication that Priority ever resumed its obligations. Further, the trial court's interpretation that Priority had until 2015 to complete its obligation would allow the City to bring a claim against Lexon as late as 2020, when the evidence is clear that Priority breached the bond in 2007. This language does nothing more than address when the City's authorization of the project expires; it has no bearing on when Priority breached the bonds.

In sum, the City's or Coco's cause of action accrued at the earliest in March 2007, when Priority stopped development of the project, or at the latest in September 2007. The City's action filed in October 2012 was filed beyond the five-year statute of limitations and was therefore time-barred. Accordingly, we reverse and remand for the trial court to enter judgment in favor of Lexon.

Reversed and remanded.


LUCAS, J., and CASE, JAMES R., ASSOCIATE SENIOR JUDGE, Concur.